**The PEOPLE of the State of Colorado, Complainant,**

**v.**

**Arminta Sue SCHOEDEL, Respondent.**

**No. 04PDJ113.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 4, 2005.

On July 19, 2005, WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ" or "the Court"), conducted a Sanctions Hearing pursuant to C.R.C.P. 251.18(d). James C. Coyle appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Anna M. Schofield ("Respondent") did not appear, nor did counsel appear on her behalf. The PDJ issues the following Report:

**REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.15(b)**

*SANCTION IMPOSED: ATTORNEY DISBARRED*

### I. ISSUE

The presumed sanction for a lawyer who abandons clients and converts their funds is disbarment. Respondent knowingly converted client money, caused clients serious injury by failing to perform services, and ultimately abandoned them. She also failed to participate or present any mitigating evidence in these proceedings. Is the presumptive sanction of disbarment appropriate under these circumstances? The Court concludes disbarment is the appropriate sanction.

### II. BACKGROUND

■ Respondent failed to participate in these proceedings, and the Court granted the People's Motion for Default on April 4, 2005. Upon entry of a default, all facts in the Complaint are deemed admitted and all rule violations in the Complaint are deemed established. *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

The factual background in this case is fully detailed in the Complaint, which is hereby adopted and incorporated by reference.[1] In summary, Respondent failed to meet her professional responsibilities in multiple client matters before and after abruptly relocating to Tennessee in April 2004. Respondent engaged in serious misconduct including the abandonment of several clients, knowing conversion of client funds, knowing violation of court orders, failure to return client files and money, and failure to cooperate in the disciplinary proceedings.

The facts admitted through the entry of default constitute multiple violations of Colo. RPC 1.3 (neglect of a legal matter); 1.4(a) (failure to communicate with a client); 1.15(b) (failure to render a full accounting of client property); 1.16(d) (failure to protect a client's interests upon termination of representation); 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); 8.1(b) (knowing failure to reasonably respond to lawful demand from disciplinary authority); 8.4(c) (knowing conversion or misappropriation of client funds); and 8.4(d) (conduct prejudicial to the administration of justice).

### III. SANCTIONS

■ The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards* ") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. While disbarment is generally appropriate when a lawyer knowingly converts client property, and abandons clients under ABA *Standards* 4.11 and 4.41, the Court must examine the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

■ As a result of Respondent's failure to participate in these proceedings, the Court must rely solely on the allegations set forth in the Complaint in examining the factors listed above. The Court finds Respondent breached her duties to her clients, the public, and the legal profession. The entry of de-

---

1. The Complaint is attached to this Report as Exhibit A.

fault establishes Respondent's knowing mental state when she abandoned her clients and converted their funds. The facts established by the entry of default also support a finding of actual and potential harm to her clients.

The People presented evidence of aggravating factors including a prior disciplinary offense, dishonest or selfish motive, a pattern of misconduct, multiple offenses, indifference to making restitution, and refusal to acknowledge the wrongful nature of her conduct. Two of Respondent's former clients made statements to the Court regarding the extent of their injuries as a result of Respondent's abandonment and conversion. Respondent's failure to appear at the Sanctions Hearing precluded evidence of mitigating factors.

 Colorado Supreme Court case law applying the ABA *Standards* holds disbarment is the presumptive sanction for knowing conversion of client funds absent significant mitigating factors. Knowing conversion in the context of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *People v. Varallo,* 913 P.2d 1, 11 (Colo.1996) (quoting *In re Noonan,* 102 N.J. 157, 506 A.2d 722, 723 (1986)). Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes. *Id.* at 10–11. Significant mitigating factors may overcome the presumption of disbarment, however none are presented in this case. *See In re Fischer,* 89 P.3d 817 (Colo.2004).

 Disbarment is also considered an appropriate sanction in cases involving a lawyer who knowingly fails to perform services and engages in a pattern of neglect. In *People v. Murray,* 887 P.2d 1016 (Colo.1994), the Supreme Court determined that knowing failure to perform services for clients in ten separate matters constituted a pattern of neglect. As a result, and because the attorney caused potentially serious harm to the clients, the attorney was disbarred. *See also People v. Williams,* 845 P.2d 1150 (Colo.1993) (disbarment warranted when lawyer neglects legal matter, fails to return client's retainer,

evades service of process, fails to respond to request for investigation, and abandons practice).

Since disbarment is the appropriate sanction here based upon conversion of client funds and a pattern of negligence leading to abandonment, the Court does not deem it necessary to discuss the other rule violations contained in the Complaint.

## IV. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The Complaint establishes Respondent abandoned of multiple clients, and conversion of funds tendered for the performance of specific services. This combination of client abandonment plus the failure to return unearned fees, standing alone, warrants serious discipline. Both the ABA *Standards* and Colorado Supreme Court case law support disbarment under such circumstances, absent extraordinary factors in mitigation not presented here. Thus, upon consideration of the nature of Respondent's misconduct, her mental state, the significant harm and potential harm caused, and the absence of mitigating factors, the Court concludes there is no justification for a sanction short of disbarment.

## V. ORDER

It is therefore ORDERED:

1. ARMINTA SUE SCHOEDEL, attorney registration number 26248, is DISBARRED from the practice of law, effective thirty-one (31) days from the date of this Order, and her name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. ARMINTA SUE SCHOEDEL is ORDERED to demonstrate full restitution to her clients, and pay the Client Protection Fund $9,325.00 as a condition of any application for readmission.

3. ARMINTA SUE SCHOEDEL is ORDERED to pay the costs of this proceeding; the People shall submit a Statement of Costs within fifteen (15)

days of the date of this Order. Respondent shall have ten (10) days within which to respond.

### EXHIBIT A

Case Number: 05PDJ113

JAMES C. COYLE, # 14,970, Deputy Regulation Counsel, Attorney for Complainant, 600 17th Street, Suite 200–South, Denver, Colorado 80202.

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

#### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 23, 1995, and is registered upon the official records of this court, registration no. 26248. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 205 South Meldrum Street, Fort Collins, Colorado 80521. The respondent's last known address is 8865 Bristol Park Drive, # 201, Bartlett, Tennessee 38133.

#### Alderman and Renpenning Matters

2. On July 16, 2002, a decree and permanent orders were entered in *In re the Marriage of Megan Renpenning and Darwin Renpenning,* case no. 01DR146, filed in Larimer County District Court. Ms. Renpenning is now known as Megan Alderman ("Ms.Alderman"). Ms. Alderman was represented by attorney Beverly D. Parmer at that time.

3. As part of the permanent orders, the court awarded the father, a Canadian citizen, primary residential custody of the parties' two minor children and indicated that Mr. Renpenning could return to Canada indefinitely with the children.

4. On July 23, 2002, Ms. Alderman retained the respondent to file an appeal of the permanent orders. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct. Ms. Alderman executed a fee agreement with the respondent providing for a $150 hourly rate and requiring an $8,000 retainer. Ms. Alderman paid the respondent $7,000.

5. Thereafter, the respondent filed a motion for stay of the primary residential parent and parenting time judgments and filed a notice of appeal with the Court of Appeals.

6. On August 6, 2002, the respondent filed a motion for emergency hearing to shorten the time period for ruling on the motion for stay of judgments. The respondent alleged in her motion that in the event the trial court denied Ms. Alderman's motion for stay, the appellate court could then rule on the stay prior to the children's removal from the United States.

7. Also on August 6, 2002, the trial court denied Ms. Alderman's motion for stay.

8. On October 31, 2002, the father filed a motion to terminate maintenance. A copy of the motion was sent to the respondent.

9. On or about November 20, 2002, the respondent's response to the father's motion to terminate maintenance was due. The respondent, however, failed to file any response to the motion.

10. From July 2002 through January 2003, the respondent billed for and received $13,888.50 for services rendered. Also, the respondent requested and was paid an additional $5,400 for anticipated services and costs.

11. On April 28, 2003, the respondent filed a verified motion and affidavit for citation for contempt of court against the father based on his alleged failure to pay one-half of Ms. Alderman's attorney's fees.

12. On May 5, 2003, the court issued its order to issue a contempt citation

against the father and set the matter for hearing on September 24, 2003.

13. On June 20, 2003, the father filed a motion for default judgment that argued that the respondent failed to file any response to his motion to terminate maintenance filed on October 31, 2002.

14. On June 30, 2003, the respondent filed a response to the motion for default.

15. A minute order dated June 30, 2003, reflects that the parties reached a stipulation as to most of the issues addressed in the motion for contempt and requested a continuance in an attempt to resolve the issues. The matter was continued to July 28, 2003.

16. Also on June 30, 2003, the respondent sent an invoice to Ms. Alderman for $1,276.50.

17. On July 10, 2003, the father's motion for default judgment was denied and the court indicated that the father could set the motion to terminate maintenance for hearing.

18. On July 17, 2003, the respondent filed a verified motion for forthwith hearing to compel compliance with parenting time order pursuant to C.R.S. 14–10–129.5 on the basis of the father's failure to pay for airline tickets for the children to visit Ms. Alderman. The matter was set for hearing on July 21, 2003.

19. On July 21, 2003, the father filed a response and the hearing was held.

20. On August 12, 2003, *nunc pro tunc* July 21, 2003, the court issued its order resolving the matter.

21. On August 22, 2003, the Colorado Court of Appeals issued its order affirming in part, reversing in part and remanding the matter with directions. In summary, the court reversed the judgment regarding child support and the allocation of transportation expenses. The case was remanded for reconsideration of these issues and for the entry of additional findings and a revised judgment, including a provision for telephone contact with the mother. The current orders were to remain in effect until such reconsideration.

22. On September 24, 2003, the court issued its order regarding the contempt citation filed by the respondent on April 28, 2003. The parties had notified the court that they had settled the matter. Thus, the court ordered that the parties file a written stipulation along with a proposed order by October 14, 2003, or the matter would be deemed abandoned by the moving party.

23. On October 3, 2003, the respondent filed a motion to modify parental responsibility, parenting time and child support, and also filed a request for an expedited hearing.

24. On October 24, 2003, the father filed his response to the above motions, and also requested a hearing on his previous motion to terminate maintenance.

25. On October 29, 2003, the court issued its order finding that adequate grounds existed to proceed to an evidentiary hearing on the matters. The court set a status conference for November 12, 2003.

26. On November 6, 2003, the court issued its amendments to the decree of dissolution of marriage and permanent orders based on the Colorado Court of Appeal's decision.

27. On February 19, 2004, a hearing was held on Ms. Alderman's motion to modify parental responsibility, parenting time and child support. The court made findings and ordered that the respondent draft a written order within 20 days. The order was thus due on or about March 10, 2004.

28. In February and March 2004, the respondent requested and was paid an additional $6,000 for services rendered.

29. On March 10, 2004, the respondent failed to file any written proposed order pursuant to the court's order of February 19, 2004.

30. Subsequently, Ms. Alderman requested that the respondent provide a bill for services rendered. The respondent, however, did not provide any billing to Ms. Alderman.

31. In April 2004, the respondent requested additional funds from Ms. Alderman to pay for future litigation. The respondent told Ms. Alderman that she could do no further work on her case until Ms. Alderman paid the funds.

32. Thereafter, the respondent went to Ms. Alderman's place of employment and told Ms. Alderman that she needed the funds by April 23 in order to deposit the funds into her COLTAF account. The respondent also told Ms. Alderman that she had ordered a copy of the transcript of the February 19, 2004, hearing. The respondent had not ordered a copy of the transcript from the court reporter when she made that statement.

33. On April 20, 2004, Ms. Alderman paid the respondent an additional $3,000.

34. In or about the end of April 2004, the respondent terminated her law practice and moved to the state of Tennessee.

35. The respondent notified Ms. Alderman of her move and told Ms. Alderman that she was taking Ms. Alderman's files with her to Tennessee. Further, the respondent told Ms. Alderman that she would leave a forwarding address with Ms. Alderman and the court. The respondent, however, failed to provide any forwarding address to Ms. Alderman, failed to contact the court, and failed to file any motion to withdraw.

36. Thereafter, Ms. Alderman attempted to reach the respondent by telephone on two occasions. The respondent failed to return Ms. Alderman's calls.

37. On May 4, 2004, the father filed a motion to extend time, clarify child support and determine arrearage, terminate maintenance, allocate 'expert' expense and other appropriate relief which stated in pertinent part:

A full-day hearing was held on this matter on February 19, 2004. Petitioner's counsel was ordered to prepare the order within twenty days of the hearing. To date, no order has been submitted.

In conversations between counsel, it became apparent that there were disagreements about what, in fact, was actually ordered. Petitioner's counsel stated that she would obtain a transcript of the ruling. Petitioner's counsel has stated that she will not receive this transcript until mid-May, 2004, about three months after the hearing.

38. On May 12, 2004, Ms. Alderman sent two letters to the respondent requesting that the respondent withdraw from her case, return the extensive client files, provide an accounting and also refund the $3,000 the respondent received for "future litigation." In one letter Ms. Alderman stated in pertinent part:

I insist that you provide me with a complete accounting of all of the fees that you have charged me since taking over my case from Beverly Parmer in July 2002, including an itemized accounting of the $6000 I was charged by you for the February 19th hearing. Also please return the $3000 you requested for future litigation and that was paid to you on April 23, 2004 immediately.

39. The respondent did not respond and did not provide any accounting or refund, and did not return the client files. As of May 13, 2004, the respondent failed to file a draft of the court order as ordered by the court. Further, the respondent did not request any extension of time.

40. On May 13, 2004, the court issued an order to show cause to the respondent and set a show cause hearing for May 25, 2004, on the basis of the respondent's failure to file the proposed order. The order to show cause was delivered to the respondent via CourtLink/Lexis-Nexis.

41. Thereafter, Ms. Alderman retained Ian D. McCargar to represent her.

42. On May 25, 2004, the respondent failed to appear. Mr. McCargar entered his appearance on behalf of Ms. Alderman. The court granted Ms. Alderman's request to terminate the services of the respondent and noted that Ms. Alderman had to contact the court reporter to obtain a copy of the transcript of the Judge's February 19, 2004 ruling.

## CLAIM I

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

43. Paragraphs 1 through 42 are incorporated herein as if fully set forth.

44. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

45. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects:

 a. by failing to prepare or file a draft of the February 19, 2004 Court order;

 b. by failing to order a transcript of the February 19, 2004 hearing as she had promised;

 c. by failing to take any further action on Ms. Alderman's case after the respondent moved to Tennessee in April 2004; and

 d. by failing to notify the client or the court of her move, and by failing to file a motion to withdraw when she knew she would no longer be representing Ms. Alderman in the pending action.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

46. The respondent's lack of diligence and promptness, and/or neglect caused potentially serious injury to the client.

47. The respondent's relocation to Tennessee and subsequent pattern and practice of failing to accomplish her professional tasks for the client after such relocation, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

48. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

49. Paragraphs 1 through 42 are incorporated herein as if fully set forth.

50. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

51. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects:

 a. by failing to respond to Ms. Alderman's telephone calls after the respondent moved to Tennessee;

 b. by failing to inform the client of the respondent's new Tennessee address; and

 c. by failing to notify her client or the court that she would no longer represent the legal interests of Ms. Alderman.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

52. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

53. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM III

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b)]

54. Paragraphs 1 through 42 are incorporated herein as if fully set forth.

55. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

56. The client sent two letters to the respondent requesting that the respondent provide billing statements and an accounting of her retainer funds, and also refund the $3,000 that the respondent received for "future litigation."

57. The respondent failed to respond to these client requests, and provided no accounting and no refund.

58. By such conduct, the respondent violated Colo. RPC. 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IV

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d)]

59. Paragraphs 1 through 42 are incorporated herein as if fully set forth.

60. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

61. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

62. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

63. The client made requests for the client's file from respondent.

64. The respondent failed to return to the client any portion of the client's $3,000.00 retainer, none of which had been earned, and failed to account for or return any other portion that had been paid.

65. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c)]

66. Paragraphs 1 through 42 are incorporated herein as if fully set forth.

67. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

68. On February 19, 2004, the court ordered that the respondent draft a proposed written order of the court's findings within twenty days.

69. The respondent was present at the time this order was entered and therefore knew of her obligation to draft and file a proposed written order of the court's findings within twenty days.

70. The respondent knowingly disobeyed the court order by failing to prepare or file such proposed order.

71. No exception exists under Colo. RPC 3.4(c) for the respondent's knowing failure to comply with the court's February 19, 2004, order.

72. By such conduct, the respondent violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VI

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

73. Paragraphs 1 through 42 are incorporated herein.

74. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

75. The respondent agreed to provide services to this client at an hourly rate of $150. The client paid for all services rendered by the respondent through February 2004.

76. In April 2004, the respondent requested and Ms. Alderman paid an additional $3,000 for future litigation.

77. The respondent provided no further legal services to Ms. Alderman, and failed to earn any of the $3,000 paid by Ms. Alderman in April 2004.

78. By failing to return the $3,000 that Ms. Alderman had paid to the respondent, when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for Ms. Alderman's benefit.

79. The respondent knew that she was keeping the $3,000 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

80. The respondent did not have permission from the client to use her funds for her personal purposes.

81. Through the unauthorized exercise of dominion or ownership of these funds, the respondent knowingly converted or misappropriated such client funds.

82. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

83. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Montoya Matter

84. On February 5, 2004, Rudy Montoya retained and paid the respondent $400 to represent him in connection with a child custody matter. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct. Although Mr. Montoya signed a fee agreement, he was unable to provide a copy of it to this office. The hourly rate was $150.

85. On March 15, 2004, the respondent filed a verified petition for allocation of parental responsibility and child support on behalf of Mr. Montoya. The parties had three children; two children resided with Mr. Montoya and one child resided with the mother. The respondent, however, failed to serve copies of the summons and petition on the mother.

86. Also, on March 15, 2004, the court issued its initial case management order.

87. Thereafter, the respondent took no further action on behalf of Mr. Montoya, including failing to notify Mr. Montoya of the case management order and failing to mail a copy of such order to the mother.

88. By March 2004, Mr. Montoya paid the respondent a total of $700.

89. In or about the end of April 2004, the respondent terminated her law practice and moved to the state of Tennessee. The respondent failed to notify Mr. Montoya of her move and failed to properly withdraw from his legal matter.

90. In April 2004, Mr. Montoya went to the respondent's office to make a payment and discovered that the respondent had vacated her office.

91. Thereafter, Mr. Montoya attempted to reach the respondent by telephone on

several occasions. The respondent, however, did not return his phone calls.

92. Subsequently, Mr. Montoya retained attorney Robert W. Wawro to substitute as counsel in the matter.

93. On May 11, 2003, the court issued its order reflecting that the court had reviewed the file and determined that no proof of service or entry of appearance by the wife had been made. The court ordered that a proof of service be filed within 30 days.

94. On May 28, 2004, Mr. Wawro filed a return of service of the petition on the mother in the matter.

95. The respondent failed to file a written response to the request for investigation filed by Mr. Montoya.

96. Although this office requested that the respondent provide an accounting and billing statements in this matter, the respondent failed to respond to such requests.

### CLAIM VII

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

97. Paragraphs 84 through 96 are incorporated herein as if fully set forth.

98. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

99. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects:

a. by failing to notify her client of the March 15, 2004, case management order and failing to mail a copy of such order to the mother;

b. by failing to take any further action on this client's case after March 15, 2004;

c. by failing to notify the client or the court of her relocation; and

d. by failing to file a motion to withdraw when she knew she would no long-

er be representing Mr. Montoya in the pending action.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

100. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client.

101. The respondent's relocation to Tennessee and subsequent pattern and practice of failing to accomplish her professional tasks for the client after such relocation, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

102. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VIII

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a)]

103. Paragraphs 84 through 96 are incorporated herein as if fully set forth.

104. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

105. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects:

a. by failing to respond to Mr. Montoya's telephone calls;

 

b. by failing to inform the client or the court of her relocation to Tennessee; and

c. by failing to inform the client or the court that she would no longer be representing the client's legal interest.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

106. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

107. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IX

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b) ]

108. Paragraphs 84 through 96 are incorporated herein as if fully set forth.

109. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

110. The Office of Attorney Regulation Counsel requested on behalf of the respondent's client that the respondent provide an accounting of the client's retainer funds, as well as provide billing statements for work performed.

111. The respondent failed to respond to these requests on behalf of the respondent's client, and provided no accounting and no refund.

112. By such conduct, the respondent violated Colo. RPC. 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM X

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

113. Paragraphs 84 through 96 are incorporated herein as if fully set forth.

114. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

115. The respondent effectively terminated the attorney-client relationship by closing her office and moving to Tennessee without notice, failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

116. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest, including but not limited to failing to surrender the client file.

117. The respondent also failed to return the client's advance payment of fees that had not been earned, despite demands and requests to do so.

118. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XI

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

119. Paragraphs 84 through 96 are incorporated herein.

120. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

121. The respondent agreed to provide services to this client at an hourly rate of $150.00. The respondent provided only one hour of service to Mr. Montoya. Thus, at best the respondent only earned $150.00 and should have returned at least $550 to Mr. Montoya.

122. The respondent then abandoned Mr. Montoya, which negated any fee earned.

123. By failing to return the $550 Mr. Montoya had paid to the respondent when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for Mr. Montoya's benefit.

124. The respondent knew that she was keeping the $550 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

125. The respondent did not have permission from the client to use her funds for her personal purposes.

126. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

127. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

128. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Ferrell Matter

129. On January 4, 1996, Tomaro Ferrell obtained a divorce in the state of Georgia. Ms. Ferrell received joint custody of the parties' two minor children. According to the final decree, the children were to reside with the father during the school year and with Ms. Ferrell from June 6 though September 2 on a yearly basis.

130. On July 29, 2003, Ms. Ferrell retained and paid the respondent $2,200 to modify the foreign child custody decree in Colorado. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct. Although Ms. Ferrell signed a fee agreement with the respondent, she was unable to locate a copy of it to send to this office.

131. On August 19, 2003, the respondent filed a summons and verified notice of filing of foreign decree in *Tomaro Ferrell v. Kevin J. Ferrell,* case no. 03DR001052, in Larimer County District Court. The respondent paid a $176 filing fee.

132. On August 21, 2003, the respondent filed motions to restrict and to modify parenting time.

133. On August 26, 2003, a telephone conference was held before the court. The court found that there was not a dispute as to the registration of the Georgia order for enforcement but that Mr. Ferrell had disputed Colorado's jurisdiction to modify child custody. The court determined that the state of Georgia no longer had exclusive continuing jurisdiction, and that the state of Virginia had jurisdiction as the home state of the children. Thus, the court determined that it did not have jurisdiction to enter an order under C.R.S. 14–10–129(4), but would enter a temporary order under C.R.S. 14–13–204 if a motion were filed. Finally, the court ruled that the order would have a brief duration and the parties were encouraged to expeditiously proceed with any disputes in Virginia.

134. On August 26, 2003, Mark Workman, Esq., entered his appearance on

behalf of Mr. Ferrell and filed a motion to dismiss for lack of jurisdiction.

135. On August 27, 2003, the respondent filed an *ex parte* emergency motion for temporary parental responsibilities and restraining order on behalf of Ms. Ferrell.

136. On August 27, 2003, Mr. Ferrell filed a motion for expedited enforcement of child custody determination. A hearing was set for August 28, 2003.

137. On August 28, 2003, the respondent filed a response to the motion for expedited enforcement of child custody determination. Also on that date, Mr. Ferrell filed a motion to dismiss.

138. On August 28, 2003, the court entered an order indicating that Colorado had temporary emergency jurisdiction and awarded temporary care of the children to Ms. Ferrell for a period of 28 days. The respondent was ordered to prepare the written order.

139. On October 8, 2003, the parties filed a stipulation providing that Colorado would have exclusive and continuing jurisdiction over the case and that the parties were working toward a further stipulation modifying parenting time to be submitted to the court in the near future.

140. On October 10, 2003, the court accepted the October 8 stipulation.

141. On October 21, 2003, an order was entered permitting Mr. Workman to withdraw. The parties had agreed to work out a stipulation with Mr. Ferrell appearing *pro se.*

142. Thereafter, the respondent sent two proposed custody and child support agreements to Mr. Ferrell. The proposed child support agreement modified the child support payment from $750 to $450 per month. Subsequently, Mr. Ferrell returned the agreements with modifications. Ms. Ferrell, however, would not accept Mr. Ferrell's modifications.

143. In April 2004, Ms. Ferrell requested that the respondent set the matter for hearing. The respondent advised Ms. Ferrell that she would set the mat-ter for hearing within a couple of weeks. Additionally, Ms. Ferrell requested that the respondent provide an accounting and billing for services rendered. The respondent, however, failed to provide any accountings or billings to Ms. Ferrell.

144. Thereafter, in or about the end of April 2004, the respondent terminated her law practice and moved to the state of Tennessee. The respondent failed to notify either Ms. Ferrell or the court and failed to properly withdraw from Ms. Ferrell's legal matter.

145. In May 2004, Ms. Ferrell attempted to reach the respondent by telephone and discovered that the respondent's office telephone had been disconnected.

146. Subsequently, Ms. Ferrell drove to the respondent's office. An attorney in the respondent's former office advised Ms. Ferrell that the respondent had vacated her office and moved to the state of Tennessee.

### *CLAIM XII*

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

147. Paragraphs 129 through 146 are incorporated herein as if fully set forth.

148. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

149. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects:

a. by failing to set the matter concerning parenting time and custody for hearing in April, or thereafter, as she had previously agreed to;

b. by failing to notify Ms. Ferrell or the court that she was relocating to Tennessee;

c. by failing to take any further action on Ms. Ferrell's case after she moved to Tennessee; and

d. by failing to file a motion to withdraw when she knew she would no longer be representing Ms. Ferrell in the pending action.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

150. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client.

151. The respondent's relocation to Tennessee and subsequent pattern and practice of failing to accomplish her professional tasks for the client after such relocation, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

152. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XIII

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

153. Paragraphs 129 through 146 are incorporated herein as if fully set forth.

154. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

155. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects:

a. by failing to respond to Ms. Ferrell's telephone calls in May 2004;

b. by failing to inform the client or the court of the respondent's Tennessee address;

c. by failing to notify the client or the court that she would no longer represent the legal interests of Ms. Ferrell.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

156. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

157. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XIV

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b) ]

158. Paragraphs 129 through 146 are incorporated herein as if fully set forth.

159. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

160. The client requested in April 2004 that the respondent provide an accounting and billing for services rendered.

161. The respondent failed to respond to these client requests, and provided no accounting, no billing, and no refund.

162. By such conduct, the respondent violated Colo. RPC. 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XV

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

163. Paragraphs 129 through 146 are incorporated herein as if fully set forth.

164. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

165. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client after her relocation to Tennessee.

166. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

167. Respondent failed to return the client's files and papers to which the client was entitled.

168. The respondent failed to return to the client any portion of the $2,200 retainer, not all of which had been earned.

169. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XVI

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

170. Paragraphs 129 through 146 are incorporated herein.

171. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

172. The respondent agreed to provide services to this client at an hourly rate of $150. The client paid respondent $2,200 to be applied toward the hourly rate.

173. At most, the respondent provided $700 worth of services. Thus, the respondent needed to refund Ms. Ferrell $1,500.

174. By failing to return the remaining $1,500 that Ms. Ferrell had paid to the respondent, when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for Ms. Ferrell's benefit.

175. The respondent knew that she was keeping the $1,500 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

176. The respondent did not have permission from the client to use her funds for her personal purposes.

177. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

178. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

179. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Pieterick Matter

180. On May 28, 2003, Ms. Pieterick retained the respondent to represent her in connection with a legal separation. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently repre-

sented that she would provide the services in accordance with the Colorado Rules of Professional Conduct. Ms. Pieterick signed a fee agreement providing for a $500 payment toward a $2,500 retainer and providing for the respondent's hourly rate of $150. Ms. Pieterick paid the respondent $500 on May 28, 2003, and thereafter, paid the respondent an additional $2,000.

181. On July 10, 2003, the respondent filed a joint petition for legal separation on behalf of Ms. Pieterick in Larimer County District Court, case no. 03DR878.

182. On August 25, 2003, Joseph T. Carroll, the husband's attorney, filed a response to the joint petition for legal separation.

183. On September 4, 2003, the court issued an order requiring the parties to file a certificate of compliance with C.R.C.P. 26.2(a)(1) within fifteen (15) days of the court's order, to conduct a joint meeting prior to a case management conference with the family court facilitator and to appear for a conference with the family court facilitator on October 1, 2003, unless an executed separation agreement settling all issues was filed prior to the conference date.

184. On September 24, 2003, the respondent filed a certificate of compliance with C.R.C.P. Rule 26.2(a)(1) on behalf of Ms. Pieterick.

185. On September 30, 2003, Mr. Carroll filed the husband's certificate of compliance.

186. On November 5, 2003, the court ordered mediation to be completed within thirty (30) days. Additionally, the court issued its case management order requiring that discovery be completed within sixty (60) days of the order, that valuations/evaluations be completed within forty-five (45) days and that a joint position statement be filed by January 9, 2004.

187. On January 9, 2004, the parties filed a joint position statement. On January 13, 2004, the court issued its order for a trial setting set for January 28, 2004.

188. During this time period, Ms. Pieterick attempted to contact the respondent by telephone. The respondent failed to return Ms. Pieterick's telephone calls in timely fashion.

189. On January 26, 2004, the respondent filed a motion requesting a 30–day extension of time in which to file discovery. The husband filed an objection to this request.

190. On January 27, 2004, the respondent filed a reply to the husband's objection. The respondent alleged in her reply that she was "unexpectedly out of town for a family medical emergency for nearly three weeks during November and December" and had she "not been attending this family emergency, the interrogatories would have been sent so that they would have been completed by January 5, 2004."

191. On February 12, 2004, the court ordered a status conference on the discovery issues for February 25, 2004.

192. On February 25, 2004, a status conference was held. The respondent did not appear. Instead, Brian McMahill appeared on behalf of Ms. Pieterick. The minute order of that date stated in pertinent part:

B. McMahill is substituting as counsel for Pet and needs to pursue discovery differently than prior counsel; case management order is modified as follows: deadline for completion of discovery and appraisals is extended to 4–9–04; deadline to request special advocate report is extended to 3–5–04; trial set.

193. On February 26, 2004, Mr. McMahill filed a substitution of counsel form signed by the respondent on behalf of Ms. Pieterick.

194. On March 19, 2004, Ms. Pieterick sent respondent a letter by certified mail, terminating the respondent's representation. Ms. Pieterick requested that the respondent provide a billing statement and a refund of any unused retainer funds.

195. On March 22, 2004, the respondent's office received, and signed for, the certified letter sent by Ms. Pieterick.

The respondent, however, failed to respond to the letter and failed to provide any billing statements or an accounting of the retainer funds.

196. According to Ms. Pieterick's March 19 letter, Ms. Pieterick complained to the respondent about the respondent's failure to comply with the discovery deadline in the case and complained about the respondent's failure to timely return Ms. Pieterick's telephone calls.

## CLAIM XVII

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

197. Paragraphs 180 through 196 are incorporated herein as if fully set forth.

198. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

199. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information by failing to respond to Ms. Pieterick's telephone calls.

200. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XVIII

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b) ]

201. Paragraphs 180 through 196 are incorporated herein as if fully set forth.

202. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

203. On March 19, 2004, the client requested that the respondent provide a billing statement and accounting of the client's retainer.

204. The respondent failed to respond to this request, and provided no accounting and no refund.

205. By such conduct, the respondent violated Colo. RPC. 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XIX

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

206. Paragraphs 180 through 196 are incorporated herein as if fully set forth.

207. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

208. The client terminated the respondent's representation on March 19, 2004.

209. The respondent failed to return to the client any portion of the $2,500 retainer, not all of which had been earned.

210. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XX

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

211. Paragraphs 180 through 196 are incorporated herein.

212. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

213. The respondent agreed to provide services to this client at an hourly rate of $150. The client paid respondent $2,500. The respondent did not provide billing statements or any other accounting regarding these client funds.

214. The respondent has failed to respond to requests by the Office of Attorney Regulation Counsel that she provide billings and/or an accounting of funds.

215. The respondent failed to earn all of Ms. Pieterick's retainer. At best, the respondent earned $825.

216. By failing to return the remaining $1,675 that Ms. Pieterick had paid to the respondent, when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for Ms. Pieterick's benefit.

217. The respondent knew that she was keeping the $1,675 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

218. The respondent did not have permission from the client to use her funds for her personal purposes.

219. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

220. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

221. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Fiffe Matter

222. On December 31, 2003, Mr. Fiffe retained and paid the respondent $2,500 to represent him in a dissolution of marriage action. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct. Mr. Fiffe signed a fee agreement that provided for the respondent's hourly rate of $150.

223. On that same day, Mr. Fiffe's wife filed a petition for dissolution of marriage in the Larimer County District Court, case no. 03DR1637. Mr. Fiffe's wife also filed a verified complaint for protective order on that date.

224. On January 5, 2004, the court entered a temporary protective order against Mr. Fiffe. Mr. Fiffe was then served with the petition and the protective order on that same date.

225. On January 5, 2004, and unaware of the previously-filed action, the respondent filed a petition for legal separation and affidavit as to children, summons for dissolution of marriage, motion for temporary orders and a notice to set temporary orders hearing on behalf of Mr. Fiffe in Larimer County District Court, case no. 04DR6.

226. On January 8, 2004, the wife filed a motion for temporary orders.

227. On January 9, 2004, the court issued its order consolidating case no. 04DR6 with case no. 03DR1637.

228. On January 9, 2004, the respondent set a forthwith hearing to modify or dissolve the protective order issued against Mr. Fiffe. A hearing was scheduled for January 14, 2004.

229. On January 14, 2004, a hearing was held. The court vacated the temporary protective order, granted the wife permission to stay in the marital residence and scheduled a temporary orders hearing for January 20, 2004.

230. On January 20, 2004, a temporary orders hearing was held. The respondent filed an affidavit with respect to financial affairs, a certificate of compliance with C.R.C.P. 26.2(a)(1), and a temporary orders position statement on behalf of Mr. Fiffe. The parties reached a

partial stipulation. At that time, the court ordered that the respondent prepare the written order on temporary orders.

231. The respondent failed to prepare the order.

232. On February 18, 2004, the court issued an order for a case management conference for March 15, 2004.

233. On March 15, 2004, the respondent appeared with Mr. Fiffe at a case management conference with the family court facilitator. At that time, Mr. Fiffe requested that the respondent provide him with an accounting. The respondent told Mr. Fiffe that she would get back to him.

234. The respondent failed to provide an accounting to Mr. Fiffe. Indeed, Mr. Fiffe did not have any contact with the respondent after March 15, 2004. The respondent failed to earn all of Mr. Fiffe's retainer. At best, the respondent earned $1,050.00.

235. Approximately one week after the March 15, 2004 conference, Mr. Fiffe called and left four telephone messages for the respondent at her office and one message on the respondent's cell phone. Mr. Fiffe needed to pick up his tax records. The respondent, however, did not respond to his calls.

236. Thereafter, Mr. Fiffe retained and paid attorney Chris D. Hefty $700 to substitute in as legal counsel. Subsequently, Mr. Hefty attempted to contact the respondent to sign a substitution of counsel form and to retrieve Mr. Fiffe's file.

237. On March 24, 2004, Magistrate Cynthia M. Hartman sent a notice to the respondent indicating that the respondent had failed to prepare and file a proposed order within 15 days of the January 20, 2004, hearing. Magistrate Hartman ordered that the respondent file the proposed order by April 9, 2004, or show cause why she had not complied with the court's instructions.

238. On April 7, 2004, the parties engaged in mediation and filed a status report with the court.

239. On April 9, 2004, the respondent failed to file the order and failed to respond to the court's order to show cause.

240. On April 14, 2004, the court issued an order to show cause for the respondent's failure to comply with the court's January 20, 2004, order. The court ordered both the respondent and Mr. Fiffe to appear in court on April 29, 2004.

241. In or about late April 2004, the respondent left the state of Colorado and moved to the state of Tennessee. The respondent, however, failed to inform either Mr. Fiffe or the trial court of her move to Tennessee.

242. On April 29, 2004, Mr. Fiffe appeared in court with Mr. Hefty. The respondent did not appear. Neither Mr. Fiffe nor Mr. Hefty had been able to contact the respondent or retrieve Mr. Fiffe's file since the respondent left the state of Colorado. The minute order for April 29 stated as follows:

Rsp Prior Atty S Schoedel has not cooperated in counsel substitution. ATR to obtain transcript of ruling on 1/20/04 hearing and file it with proposed order adopting it as temporary orders.

243. On May 18, 2004, the court issued an order to show cause against Mr. Hefty and Maureen Smith, opposing counsel, for failure of the parties to file a joint position statement.

244. On May 27, 2004, Mr. Hefty filed a motion to vacate the show cause hearing citing that he was unable to retrieve Mr. Fiffe's file from the respondent. Additionally, Mr. Hefty filed the joint position statement.

### CLAIM XXI

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

245. Paragraphs 222 through 244 are incorporated herein as if fully set forth.

246. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence

and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

247. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter:

a. by failing to file a proposed written order based upon the court's January 20, 2004, findings;

b. by failing to reasonably communicate with Mr. Fiffe; and

c. by failing to file a motion to withdraw when she knew she would no longer be representing Mr. Fiffe in the pending action.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

248. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client.

249. The respondent's relocation to Tennessee and pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

250. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XXII

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

251. Paragraphs 222 through 244 are incorporated herein as if fully set forth.

252. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

253. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects:

a. by failing to respond to Mr. Fiffe's telephone calls;

b. by failing to inform the client or the court of her relocation to Tennessee; and

c. by failing to inform the client or the court that she would no longer be representing the client's legal interests.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

254. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client.

255. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

256. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XXIII

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b) ]

257. Paragraphs 222 through 244 are incorporated herein as if fully set forth.

258. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

259. The client requested that the respondent provide him with an accounting beginning on March 15, 2004.

260. The respondent failed to respond to this client request, and provided no accounting and no refund.

261. By such conduct, the respondent violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXIV

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

262. Paragraphs 222 through 244 are incorporated herein as if fully set forth.

263. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

264. The respondent effectively terminated the attorney-client relationship by closing her office and moving to Tennessee without notice, by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

265. The respondent failed to return to the client any portion of the client's $2,500.00 retainer, and specifically the $1,450 that had not been earned. The respondent also failed to return the client file.

266. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXV

**[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]**

267. Paragraphs 222 through 244 are incorporated herein as if fully set forth.

268. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

269. On January 20, 2004, the court ordered that the respondent prepare the written temporary orders.

270. The respondent was present at the time this order was entered and therefore knew of such court order.

271. The respondent knowingly disobeyed the court order by failing to comply with such order, as well as the March 24, 2004, order to comply or show cause why she had not complied.

272. No exception exists under Colo. RPC 3.4(c) for the respondent's knowing failure to comply with these court orders.

273. By such conduct, the respondent violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXVI

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

274. Paragraphs 222 through 244 are incorporated herein.

275. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

276. The respondent agreed to provide services to this client at an hourly rate of $150. The client paid the respondent $2,500. The respondent did not provide billing statements or any other accounting regarding these client funds.

277. The respondent failed to earn all of Mr. Fiffe's retainer. At best, the respondent earned $1,050.00.

278. By failing to return the remaining $1,450 that Mr. Fiffe had paid to the respondent, when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for Mr. Fiffe's benefit.

279. The respondent knew that she was keeping the $1,450 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

280. The respondent did not have permission from the client to use her funds for her personal purposes.

281. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

282. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

283. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Macan Matter

284. On September 23, 1998, a decree entered in *Kathryn L. Macan v. Kevin J. Macan,* case no. 98DR791, in Larimer County District Court.

285. On May 28, 1999, the wife filed a motion for modification of child support.

286. On September 1, 1999, the court approved a stipulation. That stipulation provided that Mr. Macan would pay $192 monthly child support for the parties' minor child.

287. On July 11, 2003, Mr. Macan met with the respondent regarding the filing of a motion to modify parental responsibilities. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct. Mr. Macan signed a fee agreement and paid the respondent a $2,500 retainer. The respondent's fee agreement provided for the respondent's hourly rate of $150.

288. On July 17, 2003, the respondent filed a motion to modify parental responsibilities on behalf of Mr. Macan.

289. Subsequently, the respondent scheduled an appointment to meet with Mr. Macan for sometime later in July 2003. Mr. Macan appeared for the appointment and waited an hour. The respondent did not appear at the scheduled meeting with Mr. Macan.

290. Thereafter, Mr. Macan met with the respondent in August 2003. The respondent discussed the matter with Mr. Macan and requested Mr. Macan to fill out *in forma pauperis* forms to be filed with the court.

291. On August 25, 2003, the wife filed her response to the motion to modify.

292. On September 9, 2003, Mr. Macan again met with the respondent to discuss the filing of a motion for special advocate and other concerns.

293. On September 10, 2003, a status conference was held. Mr. Macan alleges that the respondent appeared an hour late, had not yet filed any of the forms for indigency status and had not filed a motion for special advocate. Mr. Macan stated that the respondent forgot their discussion regarding the need for a special advocate. After the conference, Mr. Macan expressed concerns of "lack of professionalism" regarding the respondent's conduct. The respondent apologized, said that there was no harm to Mr. Macan's case and stated that "things have been hectic" in her life.

294. Apparently, the respondent filed the motions for special advocate and for indigency at the status conference. The court ultimately noted that each party was asserting indigency, ordered that each party file financial affidavits within

ten days, indicated that the court would appoint a special advocate and granted the wife's request for a parental responsibility evaluation after the special advocate's report was completed.

295. On September 29, 2003, the court appointed a special advocate.

296. On November 18, 2003, the special advocate report was filed with the court. The court ordered Mr. Macan to file either a motion and order for parental responsibility evaluation or a notice to set the matter for hearing.

297. On November 21, 2003, the respondent sent discovery requests to the wife.

298. On December 30, 2003, the court set the matter for hearing on Mr. Macan's motion to modify for February 23, 2004, and ordered the respondent to prepare the notice of hearing.

299. On December 31, 2003, the respondent filed the notice of hearing.

300. On January 2, 2004, the wife filed a motion for protective orders.

301. On January 5, 2004, Mr. Macan called the respondent at both her office and cell telephone numbers. Mr. Macan stated that he needed "urgent legal advice" involving an emergency change of custody. Mr. Macan called the respondent because he was concerned that his wife had left the minor child outside her school in inclement weather and when the school was closed for a holiday. The respondent, however, did not return Mr. Macan's calls.

302. On January 7, 2004, the court set the matter for hearing on January 22, 2004.

303. On January 13, 2004, Mr. Macan sent a letter to the respondent terminating her representation. Mr. Macan indicated that he was terminating the respondent's representation based on the respondent's "inability" to return phone calls in a timely manner, failure to file court papers in a timely matter, failure to be prepared for the court appearance, failure to pursue his case and failure to remember details the parties had discussed. Additionally, Mr. Macan re-

quested the return of his file, an itemized statement of charges and a refund of the balance of his retainer.

304. On January 14, 2004, Mr. Macan retained attorney Randy Golden to substitute in as legal counsel.

305. On January 20, 2004, Randy Golden filed a substitution of counsel form signed by the respondent on behalf of Mr. Macan.

306. On January 23, 2004, the respondent's assistant called Mr. Macan and advised that a bill would be sent to him the following week. The respondent, however, failed to send a bill to Mr. Macan.

307. In February 2004, Mr. Macan called and left messages for the respondent on her office and cell telephone numbers. The respondent did not return Mr. Macan's calls.

308. On or about April 10, 2004, Mr. Macan traveled to the respondent's office and discovered the respondent had vacated her office.

309. Subsequently, Mr. Macan reached the respondent on her cell telephone. The respondent told Mr. Macan that she was leaving for Tennessee to care for her sick sister. The respondent told Mr. Macan that she would contact him in a week. The respondent, however, failed to contact Mr. Macan.

310. On or about April 20, 2004, Mr. Macan again called the respondent. The respondent told Mr. Macan that she was moving and would send him a bill and the remainder of his retainer. The respondent, however, failed to send Mr. Macan a bill or the remainder of his retainer.

311. On or about May 10, 2004, Mr. Macan again called and left a message for the respondent to contact him. The respondent did not return Mr. Macan's call.

## CLAIM XXVII

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

312. Paragraphs 284 through 311 are incorporated herein as if fully set forth.

313. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

314. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information by failing to return Mr. Macan's telephone calls.

315. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXVIII

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b) ]

316. Paragraphs 284 through 311 are incorporated herein as if fully set forth.

317. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

318. The client terminated the client's services on January 13, 2004. At that time the client requested the return of his file, an itemized statement of charges and a refund of the balance of his retainer.

319. The respondent failed to respond to this client request, and provided no accounting and no refund.

320. By such conduct, the respondent violated Colo. RPC. 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXIX

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

321. Paragraphs 284 through 311 are incorporated herein as if fully set forth.

322. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

323. The client terminated the respondent's services on January 13, 2004. The client requested that the respondent return his file to him, provide an itemized statement of charges and a refund of the balance of his retainer.

324. The respondent failed to return the client's files and papers despite demands and requests to do so.

325. The respondent failed to return to the client any portion of the $2,500 retainer, not all of which had been earned.

326. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### Miller Matter

327. Kimberly Miller was divorced on October 17, 2001. The husband was ordered to pay $795.11 monthly child support for the parties' minor children.

328. On September 30, 2003, Ms. Miller and her mother, Kathy Jordan, met with the respondent regarding a post-decree child custody matter. Ms. Jordan paid the respondent a $2,500 retainer on Ms. Miller's behalf. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent

inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

329. Thereafter, Ms. Miller did not receive any communication from the respondent regarding her matter through the end of 2003. The respondent took no action on Ms. Miller's case.

330. On January 16, 2004, Ms. Miller met with the respondent, at which time the respondent drafted an affidavit for the client's signature.

331. On February 3, 2004, the respondent filed motions to modify parental responsibilities and parenting time and for the appointment of a special advocate. The respondent's motion for a special advocate specifically requested that John Vap be appointed as special advocate.

332. On February 27, 2004, the court, however, appointed Jill Phipps as special advocate.

333. Thereafter, Ms. Miller asserts that she did not hear back from the respondent until she received copies of the court filings several months later.

334. Ms. Miller discovered that the special advocate appointed was not Mr. Vap, the special advocate she had requested. Ms. Miller requested that the respondent file another motion requesting the court to appoint Mr. Vap. Although the respondent agreed to do so, she failed to file any motion requesting that Mr. Vap be appointed as special advocate.

335. Additionally, Ms. Miller advised the respondent that Ms. Phipps was attempting to reach Ms. Miller by telephone. Ms. Miller asked the respondent if Ms. Miller should return Ms. Phipps telephone calls. The respondent advised Ms. Miller not to contact Ms. Phipps.

336. On or about March 23, 2004, Ms. Miller called the respondent at her office telephone and discovered the respondent's office telephone number was disconnected.

337. Ms. Miller then called the respondent on her cell telephone. The respondent advised Ms. Miller that she was leaving the state to live with a "dying relative." Further, the respondent told Ms. Miller that she would mail the remaining balance of Ms. Miller's retainer to her the following week after she moved out of state. According to Ms. Miller, the respondent told her that she did not know how much retainer balance was left but that it would be "most of it" because the respondent had not done much work on Ms. Miller's case. At best, the respondent earned $750.00 of this retainer.

338. On April 5, 2004, Ms. Phipps, the special advocate, notified the court that Ms. Miller had failed to pay the required retainer and failed to comply with the court's order of February 27, 2004.

339. On April 8, 2004, the court issued an order to show cause to the respondent and Ms. Miller to appear at a hearing on April 26, 2004. A copy of the order was placed in the respondent's pick-up box located in the Larimer County courthouse.

340. On April 26, 2004, neither the respondent nor Ms. Miller appeared. The court's minute order of that date reflects the following:

No appearance; based upon non-appearance and non-payment of special advocate fees the Crt finds Pet has in effect abandoned her motion to modify parental responsibilities and parenting time; that motion is stricken and order appointing special advocate is vacated.

341. On April 26, 2004, the matter was closed.

342. Thereafter, Ms. Miller attempted to reach the respondent regarding her matter. The respondent failed to return her calls and failed to return Ms. Miller's retainer balance.

343. Ms. Miller did not become aware that a show cause hearing had been scheduled or that her matter had been dismissed until contacted by the Office of Attorney Regulation Counsel regarding her request for investigation.

## CLAIM XXX

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

344. Paragraphs 327 through 343 are incorporated herein as if fully set forth.

345. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

346. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter:

a. by failing to timely file Ms. Miller's post-decree motions;

b. by failing to file a second motion that Mr. Vap be appointed as special advocate, as she had agreed to do;

c. by failing to communicate with Ms. Phipps; and

d. by failing to advise Ms. Miller of the show cause hearing scheduled for April 26, 2004.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

347. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

348. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client.

349. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

350. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXI

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

351. Paragraphs 327 through 343 are incorporated herein as if fully set forth.

352. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

353. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects:

a. by failing to respond to Ms. Miller's telephone calls; and

b. by failing to maintain minimum communications with the client throughout the course of the representation, which ultimately resulted in the striking of Ms. Miller's pleadings by the court.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

354. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client.

355. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected

and/or relinquished the professional responsibilities owed to the client.

356. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXII

[A Lawyer Shall Upon Request by the Client, Render a Full Accounting Regarding Client Property—Colo. RPC 1.15(b) ]

357. Paragraphs 327 through 343 are incorporated herein as if fully set forth.

358. Colo. RPC 1.15(b) provides that upon request by the client, a lawyer shall render a full accounting regarding client property.

359. On or about March 23, 2004, the client requested and the respondent agreed to provide an accounting of the client's remaining funds held in trust.

360. The respondent failed to respond to this client request, and provided no accounting and no refund.

361. By such conduct, the respondent violated Colo. RPC. 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXIII

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

362. Paragraphs 327 through 343 are incorporated herein as if fully set forth.

363. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

364. The respondent effectively terminated the attorney-client relationship when she notified the client that she was leaving the State to live with a relative. At that time, the respondent agreed to return the unused portion of the client's retainer.

365. The respondent failed to return to the client any portion of the client's $2,500.00 retainer, not all of which had been earned.

366. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXIV

[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]

367. Paragraphs 327 through 343 are incorporated herein as if fully set forth.

368. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

369. On April 8, 2004, the court ordered that the respondent and Ms. Miller appear at a show cause hearing on April 26, 2004.

370. The respondent knew (or should have known) of such court order.

371. The respondent knowingly disobeyed the court order by failing to appear at the April 26, 2004 hearing and by failing to notify her client of such order.

372. No exception exists under Colo. RPC 3.4(c) for the respondent's knowing failure to abide by the show cause order.

373. By such conduct, the respondent violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXV

[A Lawyer Shall Not Engage In Conduct That Is Prejudicial to the Administration of Justice—Colo. RPC 8.4(d) ]

374. Paragraphs 327 through 343 are incorporated herein as if fully set forth.

375. Colo. RPC 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

376. By failing to appear pursuant to the show cause order, the respondent acted in contravention of the court's authority.

377. Such failure to attend interfered with the ebb and flow of the procedures and the function of the court. Because of such failure, the court dismissed the client's pleading.

378. By such conduct, the respondent violated Colo. RPC 8.4(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXVI

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

379. Paragraphs 327 through 343 are incorporated herein.

380. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

381. The respondent agreed to provide services to Ms. Miller at an hourly rate. Ms. Miller paid the respondent $2,500. The respondent did not provide billing statements or any other accounting of these client funds.

382. The respondent failed to earn all of Ms. Miller's retainer. At best the respondent earned $750.00 of this retainer.

383. By failing to return the remaining $1,750 Ms. Miller had paid to the respondent when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for Ms. Miller's benefit.

384. The respondent knew that she was keeping the $1,750 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

385. The respondent did not have permission from the client to use her funds for her personal purposes.

386. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

387. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

388. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXXVII

[An Attorney Shall Respond to a Request By the Regulation Counsel for Information Necessary to Carry Out the Performance of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]

389. From May 13 through September 13, 2004, copies of the requests for investigation filed by Tomaro Ferrell, Janelle Pieterick, Patrick Fiffe, Kevin Macan and Kimberly Miller were sent by both regular and certified mail to the respondent at her registered business and residence addresses in Colorado and by both regular and certified mail to the respondent at her current address in the State of Tennessee.

390. In the *Ferrell* and *Pieterick* matters, the return receipts attached to the certified letters sent to the respondent at her current address in the State of Tennessee were signed by the respondent on an unknown date and returned to the Office of Attorney Regulation Counsel.

391. In the *Fiffe* matter, the return receipt attached to the certified letters sent to the respondent at her current

address in the State of Tennessee was returned to the Office of Attorney Regulation Counsel marked "unclaimed."

392. In the *Macan* and *Miller* matters, the return receipts attached to the certified letters were not returned.

393. On July 8, 2004, copies of the requests for investigation filed by Ferrell, Pieterick and Fiffe were re-mailed by both certified and regular mail to the respondent at her current Tennessee address per the respondent's request.

394. On August 26, 2004, James C. Coyle, Deputy Regulation Counsel, telephoned the respondent regarding the requests for investigation filed by Ferrell, Pieterick, Fiffe, Macan and Miller. The respondent was given an additional fourteen (14) day extension of time to file her written responses. The respondent, however, failed to file any written responses.

395. Moreover, from May 13 through September 13, 2004, numerous reminder letters were sent to the respondent, and Chief Investigator Deborah Ortiz had several telephone conferences with the respondent requesting her to file her written responses to the requests for investigation filed by Ferrell, Pieterick, Fiffe, Macan and Miller. The respondent, however, failed to file any written responses to the requests for investigation, and the time allotted for her to do so has expired in all matters.

396. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

397. The respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel for information from the respondent.

398. The respondent knew or should have known that she was failing to cooperate and respond to the request by Attorney Regulation Counsel.

399. By such conduct, the respondent violated C.R.C.P. 251.5(d).

400. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

401. As an attorney licensed to practice law in the state of Colorado, the respondent knew or is presumed to know of the obligation to respond to a request by the Attorney Regulation Counsel as set forth in C.R.C.P. 251.5(d). The respondent was reminded of this obligation in numerous correspondence.

402. Nevertheless the respondent knowingly disobeyed such obligation, and made no open refusal to obey that was based on an assertion that no valid obligation existed.

403. By such conduct, the respondent violated Colo. RPC 3.4(c).

404. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

405. The respondent knowingly violated the rule by failing to respond to the lawful demands for information made by Attorney Regulation Counsel during the investigation of the subject matter of this disciplinary proceeding.

406. The information sought did not require disclosure of information otherwise protected by Colo. RPC 1.6.

407. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information.

408. By such conduct, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the clients, and/or the client protection fund pursuant to C.R.C.P. 252.14(b)[2]; the respondent be re-

2. On December 9, 2004, the Board of Trustees for the Colorado Attorneys' Fund for Client Pro-

tection authorized payments of claims that had been filed by Ms. Alderman ($3,000.00), Mr.

quired to return client files (or other client property); the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

Montoya ($700.00), Ms. Ferrell ($1,500.00), Ms. Pieterick ($1,675.00) and Mr. Fiffe ($1,450.00). No CPF claims have been filed by Mr. Macan or Ms. Miller as of the date of the filing of this complaint.